UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-21067-RAR

**MANUEL BALBIN**,

    Plaintiff,

v.

**TRAVON A. WILLIAMS**, *et al.*,

    Defendants.
_____/

## ORDER DISMISSING COMPLAINT

**THIS CAUSE** comes before the Court on *sua sponte* review of the docket and Plaintiff's *pro se* civil rights Complaint under 42 U.S.C. § 1983, [ECF No. 1] ("Compl."). Plaintiff alleges that, on August 20, 2021, Defendants—five correctional officers employed at the Pre-Trial Detention Center in Miami, Florida—"knowingly and deliberately" allowed other inmates to rape and nearly kill Plaintiff "in retaliation for Plaintiff filing a prior sexual assault complaint." Compl. at 2.

However, Plaintiff previously filed another lawsuit in this Court concerning this same August 20, 2021 attack. In that suit, Plaintiff blamed a completely different set of correctional officers for "fail[ing] to take adequate measures to prevent the attack." *Balbin v. Latin*, No. 22-CV-20332, 2023 WL 3970949, at *1 (S.D. Fla. June 13, 2023). This earlier case proceeded to summary judgment, where U.S. District Judge Beth Bloom reviewed the undisputed material facts and concluded that those defendants were entitled to qualified immunity since Plaintiff failed to "establish that he faced a substantial risk of serious harm prior to the attack." *Id.* at *7. Since this Complaint merely seeks to relitigate an issue that has already been decided, the Court must **DISMISS** this action for failure to state a claim under the doctrine of collateral estoppel.

## FACTUAL ALLEGATIONS

On August 20, 2021, Plaintiff was in solitary confinement in "unit 8A1, cell #5, on the 8th floor" for his own protection after he complained about an incident with another inmate under the Prison Rape Elimination Act ("PREA"). Compl. at 2. Plaintiff alleges that, around 7:00 a.m., Defendant Dorvilier entered Plaintiff's cell "and announced that it was recreation time." *Id.* When Plaintiff refused to go, Dorvilier expressed disappointment that another inmate, Demetrius Saunders, would not have the opportunity to kill Plaintiff for filing his PREA grievance. *See id.* at 3. Saunders and two other inmates, Jackson and Borcela, verbally announced in the presence of Dorvilier that "we will kill Balbin." *Id.*

Twenty minutes later, Defendants Williams, Nerville, White, and Howard "removed Plaintiff . . . by force in order to fumigate [his cell]" and placed Plaintiff in a nearby visitation booth. *Id.* When Plaintiff begged Defendants to lock the door to the visitation booth or place him back in his cell so he could be safe from the other inmates, Defendants responded that they were purposely leaving him in the visitation booth so that inmate Saunders could attack him for filing his PREA grievance. *See id.* at 3–4. At 8:30 a.m., Dorvilier returned with inmates Saunders, Jackson, and Borcela. *See id.* at 4. Upon seeing that Plaintiff was in the unlocked visitation booth, Dorvilier instructed the inmates to "get him." *Id.* Dorvilier left Saunders, Jackson, and Borcela unsupervised, the inmates entered the visitation booth, and then proceeded to rape, beat, and stab Plaintiff. *See id.*

## LEGAL STANDARD

The Court "*shall* review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A (emphasis added). The definition of a "prisoner" includes "any person incarcerated or detained in

any facility who is . . . accused of [or] convicted of . . . violations of criminal law." *Id.* § 1915A(c). In conducting its screening of a prisoner's complaint, the Court must "dismiss the complaint[] or any portion of the complaint," when it is (1) "frivolous, malicious, or fails to state a claim upon which relief may be granted[;]" or (2) "seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b). Similarly, under § 1915(e)(2), "the court *shall* dismiss [a] case *at any time* if the court determines that . . . the action" fails for the same enumerated reasons articulated under § 1915A. *Id.* § 1915(e)(2)(B) (emphasis added).

To state a claim upon which relief may be granted, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level"—with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Under this standard, legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Moreover, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotation marks omitted).

If a plaintiff fails to set forth a legally sufficient claim for relief, either because the complaint lacks sufficient factual support or because the complaint fails to comport with the appropriate procedural rules, its usefulness is substantially diminished. Still, a *pro se* litigant must generally "be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Woldeab v. DeKalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018) (quoting *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991)). "A district court need not, however, allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing

amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)).

## ANALYSIS

Correctional officers have a constitutional duty to protect inmates "from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). "To succeed on a failure-to-protect claim, a plaintiff must satisfy three elements. First, the plaintiff must show that she was incarcerated under conditions posing a substantial risk of serious harm. Second, the plaintiff must show that the prison official had a sufficiently culpable state of mind, amounting to 'deliberate indifference.' Third, and finally, the plaintiff must demonstrate causation—that the constitutional violation caused her injuries." *Cox v. Nobles*, 15 F.4th 1350, 1357–58 (11th Cir. 2021) (cleaned up). To prove a "defendant's deliberate indifference to that risk," the plaintiff must show that the defendant "actually (subjectively) knew that an inmate faced a substantial risk of serious harm" and that the defendant "disregarded that known risk by failing to respond to it in an (objectively) reasonable manner." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (cleaned up).

Although Plaintiff's factual allegations appear to state a *prima facie* claim for deliberate indifference at first blush, this is Plaintiff's <u>second</u> attempt to seek damages for the incident that took place on August 20, 2021. The doctrine of collateral estoppel "precludes the relitigation of an issue that has already been litigated and resolved in a prior proceeding." *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1359 (11th Cir. 1998). Collateral estoppel applies when: "(1) the issue at stake is identical to the one involved in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the determination of the issue in the prior litigation must have

been 'a critical and necessary part' of the judgment in the first act; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding." *Id.* (quoting *I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986)). Although collateral estoppel is generally an affirmative defense, a court "may apply preclusion principles *sua sponte*" if it is "the same court [that] made the decision in the prior proceeding." *Parris v. Taft*, 630 F. App'x 895, 900 (11th Cir. 2015) (citing *Shurick v. Boeing Co.*, 623 F.3d 1114, 1116 n.2 (11th Cir. 2010)).

Collateral estoppel plainly applies here. First, the issues in the two cases are identical: both concern alleged deliberate indifference to Plaintiff's safety on August 20, 2021, when correctional officers left Plaintiff in a visitation booth despite (allegedly) knowing that other inmates might harm him. *See Balbin*, 2023 WL 3970949, at *1 ("Plaintiff alleges he was attacked by other inmates in his unit on August 20, 2021, and the Defendants failed to take adequate measures to prevent the attack."); *see also, e.g.*, *Parris*, 630 F. App'x at 900 ("[I]n both *Parris I* and this case, Mr. Parris asserted that the officers lacked probable cause to arrest him."). Two, the issue of whether correctional officers were deliberately indifferent to Plaintiff's safety on August 20, 2021 was fully litigated, with the Court concluding at summary judgment that Plaintiff could not "establish that he faced a substantial risk of serious harm prior to the attack." *Balbin*, 2023 WL 3970949, at *7. Third, the determination Plaintiff did not face a substantial risk of serious harm was <u>dispositive</u> to the Court's decision to grant summary judgment in favor of the defendants. *See id.* at *8 ("Plaintiff's failure to establish the first element necessarily results in Defendants Latin, McGahee, and Wooden being entitled to qualified immunity."). Finally, Plaintiff had a full and fair opportunity to litigate this issue in his first case since he had the ability to conduct discovery and respond to the defendants' summary judgment motion—even if Plaintiff chose not to take

advantage of these opportunities.  *See AmeriMortgage Bankers, LLC v. Morgan Stanley Mortg. Cap. Holdings, LLC*, No. 09-CV-20949, 2010 WL 11506358, at *5 (S.D. Fla. Mar. 2, 2010) ("The fact that AmeriMortgage chose not to litigate, by failing to respond to the Motion for Summary Judgment in the First Lawsuit, does not change the fact that it had the opportunity to do so.  Thus, AmeriMortgage's breach of contract claim is barred by issue preclusion.").

While the Court is cognizant that there are factual differences between this case and Plaintiff's earlier case, these differences cannot overcome collateral estoppel.  For starters, Plaintiff's decision to name an entirely new set of defendants in this case is irrelevant since "there is no requirement of mutuality of parties for collateral estoppel to apply." *Parris*, 630 F. App'x at 900 (citing *Hercules Carriers, Inc. v. Claimant State of Fla., Dep't of Transp.*, 768 F.2d 1558, 1578 (11th Cir. 1985)).  In any event, not only are the Defendants in this case and the defendants in Plaintiff's earlier case all correctional officers that were allegedly involved in the same August 20, 2021 incident, but some of the Defendants in this case were factually relevant to the first case. *See Balbin*, 2023 WL 3970949, at *3 (recounting the undisputed facts that Office Dorvilier "arrived back to the eighth floor with the inmates from recreation" and that Officer Neville tried "to separate Saunders, Jackson, and Borcela from Balbin").

The Court also notes that the allegations in Plaintiff's Complaint are conspicuously at odds with the facts from his first case.  For instance, the Court previously found that Plaintiff was removed from his cell—not because the correctional officers wanted to make it easier for other inmates to stab him—but because his "unit needed to be cleaned and sanitized" since there was an outbreak of COVID-19 in the cell block. *Balbin*, 2023 WL 3970949, at *7.  Also, contrary to Plaintiff's incendiary allegations that Defendants purposely enlisted other inmates to attack him for filing grievances, the undisputed facts from Plaintiff's first case show that dozens of

correctional officers—including Defendants Dorvilier and Neville—immediately sprang into action and succeeded in separating Plaintiff from the attacking inmates. *See id.* at *3–4. There were no allegations or evidence presented during Plaintiff's first lawsuit indicating that correctional officers had orchestrated the attack to retaliate against Plaintiff. *See generally id.* at *2–4. Indeed, Judge Bloom described the August 21, 2021 incident as a "perfect storm" that arose due to an "'utterly unplanned' series of events that put Balbin in harm's way." *Id.* at *7 (citing *Brooks v. Warden*, 800 F.3d 1295, 1302–03 (11th Cir. 2015)). Although the Court must generally presume that the allegations in the Complaint are true, it cannot overlook that the Complaint materially conflicts with the undisputed facts from Plaintiff's earlier lawsuit concerning the exact same event. *See Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1075–76 & n.9 (11th Cir. 2013) (taking judicial notice of a "state eviction action" to determine if issue preclusion applied). The Court will not condone this apparent manipulation of the facts so that Plaintiff can reinstitute a materially identical lawsuit and get a second bite at the apple.

## CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** that the Complaint, [ECF No. 1], is **DISMISSED** for failure to state a claim upon which relief may be granted under the doctrine of collateral estoppel. *See* 28 U.S.C. § 1915A(b). All pending motions are **DENIED** as moot. This case is **CLOSED**.

**DONE AND ORDERED** in Miami, Florida, this 21st day of March, 2024.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**